12 N.J. Super. 326 (1951)
79 A.2d 695
FRANK DUDA, AN INFANT, BY HIS GUARDIAN AD LITEM, MARION DUDA, AND MARION DUDA, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
JOSEPH GAINES AND THEODORE COOPER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1951.
Decided March 21, 1951.
Before Judges McGEEHAN, JAYNE and WILLIAM J. BRENNAN, JR.
Mr. Mario Turtur argued the cause for plaintiffs-appellants.
Mr. William N. Campbell argued the cause for defendants-respondents.
*327 The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
The defendants are teachers at the Linden High School and coaches of the school football team. The infant plaintiff, a student at the school and a candidate for the football team, injured his right shoulder during tackling practice. This suit was brought in the Union County Court for damages for the alleged negligence of defendants in failing to obtain medical assistance for him "as the emergency which existed by reason of the accidental bodily injuries to the plaintiff reasonably required."
The trial court dismissed the action on defendant's motion at the close of plaintiffs' proofs, and plaintiffs appeal from the consequent judgment.
The parties tried the case under a stipulation incorporated in an amendment to the pretrial order The stipulation was, "as to the law covering the case, namely both parties agree that the law is that the teachers, if they were athletic coaches, and were in charge of the boy, as such, were required to use reasonable care in case of an accident constituting an emergency, which reasonably appeared to them, as reasonable men, to require immediate medical attention, if no reasonable opportunity presented itself under those circumstances to first notify the parents, or either of them, of the emergency."
We deal with this appeal on the theory upon which the case was tried by the agreement of the parties. Their stipulation in the pretrial order limiting the extent of defendants' legal duty to summon medical aid to a situation in which an emergency was presented eliminates as a matter for decision the question whether that was the limit in law of the scope of the teachers' legal duty in the circumstances. We are not to be understood, therefore, as intimating any view upon that question.
Among the grounds upon which the trial court rested its action in granting the motion for dismissal was that, accepting the plaintiff's proofs as true and giving him the benefit of all legitimate inferences which might be drawn therefrom, such proofs as a matter of law did not support the existence of the alleged emergency. Our review of the *328 record satisfies us that fair-minded men could not honestly differ as to the conclusions to be drawn from the proofs in that regard and that therefore the dismissal was proper.
The emergency from which would arise the stipulated legal duty can be said to exist when a reasonable man having the knowledge of facts known to the teachers or which they might reasonably be expected to know would recognize a pressing necessity for medical aid, and the dictates of humanity, duty and fair dealing would require that there be put in the boy's reach such medical care and other assistance as the situation might in reason demand so that the pupil might be relieved of his hurt and more serious consequences be avoided. See Szabo v. Pennsylvania Railroad Company, 132 N.J.L. 331 (E. & A. 1944). There is no emergency in the absence of proofs from which it is reasonably inferable that the decision whether to secure medical aid and the choice of the physician cannot safely await parental determination. Cf. Guerrieri v. Tyson, 147 Pa. Super. 239, 24 A.2d 468 (Super. Ct. 1942).
The alleged emergency in this case is said to have existed on an unspecified day in October, 1947. On September 20, 1947, the infant plaintiff while practicing picking up fumbles dove at a football, hit his shoulder against the ground and "knocked it out of place." On that occasion defendant Cooper "snapped it back in place" and put the boy's arm in a sling. The next day Cooper sent the boy to the school physician, Dr. Williams, who "just felt the shoulder * * * put it in a sling and * * * said `You can go back and play in about two weeks.'" Two weeks later, on the October day in question, the boy reported to Mr. Cooper that the doctor had said he could "resume practice with the football squad" and Cooper permitted him to put on his football equipment and participate in practice. The boy then reported to the defendant Gaines, who was supervising tackling practice, and on the first occasion that he tackled another player "my shoulder came out of place again." He testified that he lay there and could not get up, that Gaines picked him up and "when Mr. Gaines picked me up, it snapped in by itself." Gaines felt underneath the arm and moved *329 it in different ways. When the boy told him the arm hurt Gaines told him to go home. The boy returned to the clubhouse to change his clothes and saw Cooper. He told Cooper he had hurt his shoulder. Cooper then felt around the arm and told him, "I am afraid you won't be able to play football for the rest of the year, you better turn your uniform in." The boy testified that he asked Cooper, "Should I go and see the doctor again" and Cooper said, "No you don't have to go this time." Cooper put the arm in a sling, another boy helped him to dress and he then walked home. The other boy carried his books. He wore the sling for three days thereafter at home and in the presence of his parents and did not miss any days at school.
It is clear that this evidence and the inferences which may legitimately be drawn therefrom in no wise could support a finding of an immediate pressing necessity for medical aid for the boy before he went home and that the decision whether to obtain such aid could not await his parents' consideration. He was suffering pain from the injury but was fully possessed of his faculties, was able to walk unattended the 125 yards from the field to the clubhouse and after changing clothes to walk home. In these circumstances the facts do not reasonably permit opposing conclusions by fair-minded men as to whether or not the boy was then in urgent need of medical attention. The proofs presented nothing for the jury's determination nor did they make out a prima facie case which called for a defense.
Affirmed.