Sanford **APPLEBAUM, et al.,**
**Appellants,**

v.

David **NEMON, et al., Appellees.**

No. A14–83–376–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 31, 1984.

Larry L. Gollaher, Gollaher & Hart, Dallas, Howell E. Stone, Talbert, Giessel, Stone, Barker & Lyman, Houston, for appellants.

Clifford Gorman, Reginald A. Hirsch; Dunn, Stern, Lipstet, Singer & Hirsch, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This wrongful death and survival action was brought by appellees, David Nemon and Suzanne Nemon, for the death of their two year old son, Howard Nemon against appellants, Montessori Educational Corp. of Texas, d/b/a Houston Children's Center, and its officers and employees, Sanford Applebaum, Marilyn Applebaum, Noreen DeBoy, and Jackie Jones. Appellees delivered Howard into the care and custody of Houston Children's Center on December 19, 1980.

The testimony concerning the circumstances of Howard Nemon's death was as follows. After Howard was delivered to the day care center on December 19, 1980 by his parents, he was taken outdoors for twenty to twenty-five minutes of free play. Jackie Jones observed Howard playing on various equipment. A short time later, Jackie Jones began lining the children up to return inside and discovered Howard with his head on the playground equipment known as the platform, feet touching the ground with his hands near his head. After Howard did not respond to clapping hands, she went over and picked Howard up and laid him on the platform. She then summoned Sanford Applebaum who examined Howard for ten seconds and then called the operator to obtain an ambulance. Applebaum returned to Howard and rendered mouth-to-mouth resuscitation for two to three minutes. He then telephoned the fire department direct for an ambulance a second time, because the ambulance had not yet arrived. He returned to Howard

and continued mouth-to-mouth resuscitation until the ambulance arrived. Howard was transported by the ambulance to Southwest Memorial Hospital. He was later transported to Texas Children's Hospital where he was pronounced dead at 2:59 p.m. on December 22, 1980. Howard was brain dead at the time he first received treatment at the hospital.

By special issues the jury (1) failed to find that Howard Nemon was injured on the playground; (2) found that the day care center's failure to provide adequate life-saving aid to Howard was negligence proximately causing his death; (3) found that the day care center's failure to instruct its employees in proper measures to be taken in an emergency was negligence proximately causing Howard's death; and (4) assessed values for various types of damages. The trial court rendered judgment on the verdict for appellees in the amount of $304,822.53 against appellees.

Appellants' raise eight points of error on appeal. We will address only the third and fourth points of error because our holding on these points is dispositive of this appeal. We find no evidence to support the jury findings of negligence and proximate cause against appellants. We therefore reverse and render.

■ Appellant contends in its fourth point of error that the jury's findings that appellant was negligent in (1) failing to provide adequate and proper life-saving aid to Howard Nemon and (2) failing to instruct its employees as to the proper measures to be taken in the event of an emergency on its premises are immaterial because appellant did not owe a duty to provide adequate life-saving aid or to instruct its employees in emergency procedures. There can be no liability if the defendant has not breached a duty which he owed to the plaintiff. *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex. 1976).

There is no Texas statute or regulation which imposes on day care centers these specific duties. We must determine whether these duties arise from the common law.

■ Deeply rooted in the common law is the doctrine that a person owes no duty to render aid to one for whose initial injury he is not liable. 57 Am.Jur.2d § 41 (1971); 33 ALR3d 301 (1970); *Riley v. Gulf, C. & S. F. Ry. Co.*, 160 S.W. 595, 597 (Tex.Civ.App. —Amarillo 1913, no writ.); *Boyer v. Gulf Colorado & Santa Fe Railway Co.*, 306 S.W.2d 215, 220 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). However, in other jurisdictions, it has been held that certain relationships may impose a duty to render assistance to one for whose initial injury he is not liable.

■ The relationship between Howard Nemon and appellants was that which exists between a child and the day care center to which the care of the child has been entrusted. The relationship is an economic one in which the day care center in exchange for a fee agrees to care for the child and to protect the child from harm during the time the child is in the custody of the day care center. We hold this relationship includes both an implied agreement and a duty to render reasonable assistance to a child in its custody who becomes imperiled.

Restatement of the Law of Torts, Second, § 314 provides in part:

(1) A common carrier is under a duty to its passengers to take reasonable action ...

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Appellants, as the day care center with custody of Howard Nemon, would come

under either subsection three or four of § 314. Illustration seven under § 314 demonstrates the duty and liability which can arise from the relationship which existed between appellants and Howard Nemon.

> 7. A is a small child sent by his parents for the day to B's kindergarten. In the course of the day A becomes ill with scarlet fever. Although recognizing that A is seriously ill, B does nothing to obtain medical assistance, or to take the child home or remove him to a place where help can be obtained. As a result, A's illness is aggravated in a manner which proper medical attention would have avoided.

This illustration is based on *Pirkle v. Oakdale Union Grammar School District*, 40 Cal.2d 207, 253 P.2d 1 (1953); *Cf. Barbarisi v. Caruso*, 47 N.J.Super. 125, 135 A.2d 539 (1957).

The relationship giving rise to the duty to render aid in this cause is analogous to the relationship between a student and the school which he attends. The courts have been quick to recognize that this relationship gives rise to a duty to render assistance to a student initially injured without the fault of the school. *Pirkle v. Oakdale Union Grammar School District*, supra; *Duda v. Gaines*, 12 N.J.Super. 326, 79 A.2d 695 (1951). Although there is no authority in this state which applies the duty to render aid to a day care center we choose to follow the Restatement of the Law of Torts 2d Ed. and the law of other jurisdictions which hold that day care centers have a duty to render aid to children in their custody. The imposition of this duty is consistent with the Minimum Standards for Day Care Centers promulgated by the Texas Department of Human Resources. These standards require day care centers to give first aid when needed, to call the physician named by the child's parents in the case of critical injury or illness, and to take the child to the nearest emergency room when necessary.

The standard of care imposed on one with a duty to render aid is explained in Comment f. of § 314, Restatement of the Law of Torts 2d.

> f. The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained. He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and apparently in a position to give him all necessary assistance.

The standard of care which appellants were under was whether they acted reasonably under all the circumstances in their rendition of aid. Appellants were not insurers of the life of Howard Nemon. In most circumstances a defendant will not be required to do more than administer whatever initial aid he reasonably can and knows how to do, and take reasonable steps to place the injured person in the hands of a competent physician. 13 Am.Jur. Proof of Facts 2d 709; 57 Am.Jur.2d § 46; W.L. Prosser, *Handbook on the Law of Torts*, § 54 Acts and Omissions 343 (1971).

In fact, if the person who is charged with the duty to render aid is not possessed with medical training and he undertakes to render medical assistance, he may be liable if such assistance is found to be detrimental. *Mogabgab v. Orleans Parish School Board*, 239 So.2d 456 (La.Ct. App.—1970). Courts do not expect school personnel to possess a physician's knowledge nor do they want school personnel to assume the role of physician. *Welch v. Dunsmuir Joint Union High School Dist.*, 326 P.2d 633 (Cal.Ct.App.1958); *Guerrieri v. Tyson*, 147 Pa.Super.Ct. 239, 24 A.2d 468 (1942).

The specific issues before us are whether the standard of care which appellant were under required them to (1) provide adequate and proper life-saving aid to Howard Nemon and (2) to instruct its employees as to the proper measures to be taken in the event of emergency on its premises.

The specific life-saving aid which appellees allege appellants should have rendered to Howard Nemon was cardiopulmonary resuscitation. While CPR is a simple technique to learn and administer, it is a skill which is not commonly known and must be acquired through training. In *City National Bank of Hallandale v. 4000 Restaurant, Inc.*, 372 So.2d 1146 (Fla.App.Ct.1979) the plaintiff sued a hotel and restaurant for failing to render prompt aid to her when she began choking on a piece of meat. She claimed that the defendants were negligent in failing to train their personnel to render first aid to choking patrons. The court affirmed the trial court's dismissal of the complaint with prejudice. The dissent concurred with the dismissal as to the allegations concerning the training of hotel and restaurant personnel stating that there was no duty to provide medically trained employees in anticipation of the problem that occurred here.

■ We recognize that appellants had a duty to procure medical assistance as soon as reasonably possible upon discovering Howard Nemon in an unconscious state. But we cannot find any basis in the common law for requiring appellants to have medically trained employees who can administer CPR or some other type of life saving aid. Day care centers are regulated by the Texas Department of Human Resources. The Department does not require medical training or expertise of day care center employees. Such a requirement, if considered wise and valuable, should be imposed by the legislature or the Department of Human Resources and not by this court. We hold that while appellants had a duty to render assistance to Howard Nemon, they had no duty to provide life-saving aid to Howard Nemon which requires special training to acquire.

■ We next consider whether appellants' duty to render aid to Howard Nemon encompasses a duty to prepare beforehand for medical emergencies concerning the children in their custody by instructing its employees on emergency measures. The specific omissions which appellees argue that violated this duty were appellants' failure to assign responsibilities to its employees in the event of an emergency and to conduct emergency drills to practice these responsibilities. We can find no authority which holds that the duty to render aid requires preparation to deal with a medical emergency prior to its occurrence. The Texas Department of Human Resources minimum standards for day care centers requires that emergency telephone numbers be posted by a telephone which is accessible to all staff members. Apart from this requirement, there is no state law or regulation which requires day care centers to instruct its employees in procedures for medical emergencies or to conduct drills. The duty to render aid as it has developed in the common law does not arise until after the emergency has occurred. Then the inquiry becomes whether the defendants acted reasonably under all circumstances in their rendition of aid. If the defendants acted reasonably in their rendition of aid, there is no liability and it is irrelevant whether the defendants prepared adequately beforehand. The ultimate negligence issue in this case, whether appellants acted reasonably under all the circumstances in their rendition of aid to Howard Nemon, was never submitted to the jury. While failure to prepare adequately beforehand may contribute to a defendant's negligence in the rendition of aid, there can be no liability unless there is a finding that the actual rendition of aid was unreasonable. We hold that the duty appellants owed to Howard Nemon was not to instruct its employees in emergency procedures beforehand, but was to act reasonably under all the circumstances in the rendition of aid to Howard Nemon.

Since we have held that appellants did not owe to appellees the particular duties

which were submitted to the jury, we sustain appellants' fourth point of error.

Appellants contend in their third point of error that there is no evidence to support the jury's finding that the acts and/or omissions of appellants were the proximate cause of the death of Howard Nemon.

The specific omissions which appellees allege that proximately caused the death were (1) appellants' failure to render CPR to Howard Nemon, (2) appellants' failure to instruct its employees in emergency procedures which caused delay in the arrival of the ambulance. The only evidence which appellees offered in support of these allegations is the following testimony of Dr. Jachimcyk as an expert medical witness.

Q. Doctor, let's talk about CPR. What is that?

A. CPR is cardiopulmonary resuscitation.

Q. Dr. Jachimczyk, would you explain for the jury the history and background of cardiopulmonary resuscitation?

A. Well, I'm not a very good historian. I'll give you what I know about it.

Q. Would you please?

A. This is an attempt to revive an individual when he or she becomes unresponsive. The way I understand it, it's the ABC approach. Whenever a person is found, for example, unconscious, you're to establish an airway fist. That's the "A" part. You've got to make sure that they're breathing. That's the "B" part. You've got to make sure that there is circulation. That's the "C" part. The physiology involved is that you want to give mouth-to-mouth resuscitation. By that I mean mouth-to-mouth breathing. You are breathing for the individual, the unconscious individual. Then you are giving them chest, or in the case of a baby or a small youngster, upper abdominal pressure, and you do this in a rhythmic fashion in order to breathe and keep the heart going for particular—for the victim until he or she revives.

Q. Is mouth-to-mouth resuscitation the same thing as CPR?

A. That's only part of CPR. That's the respiratory part. The compression part is the heart action part.

Q. Dr. Jachimczyk, do you have an opinion, based upon reasonable medical probability, your education, training, and background, as to whether or not a two-and-a-half-year-old child can be revived after losing consciousness within three minutes?

A. If that is so, yes. The surviving—the recovery rate is very, very good, yes.

Q. If CPR, the ABC's, is not commenced within three minutes, in your opinion what is going to happen to the child?

A. He's going to have permanent brain damage and no recovery.

Q. Then is time of the essence?

A. Time is very definitely of the essence, yes, sir.

Q. Would a child then logically have a better chance of being revived and survive if the ABC's are commenced within a minute?

A. Oh, absolutely, yes.

Q. The sooner the better?

A. The sooner the better, right.

Q. Now, Dr. Jachimczyk, once the mouth-to-mouth portion is commenced with a victim that is found, under what circumstances, based on your expertise, does the person performing mouth-to-mouth leave the child?

A. The victim should not be left. Help should be sought by asking somebody else to call an ambulance or something of that sort.

■ To support a finding of proximate cause, the medical testimony must establish a reasonable medical probability that the failure of Mr. Applebaum to render CPR caused the death of Howard Nemon.

In the absence of reasonable probability, the inference of causation amounts to no more that conjecture or speculation. A mere possibility that a certain omission by appellants caused the death is insufficient. *Schaefer v. Texas Employers' Insurance Association*, 612 S.W.2d 199, 202 (Tex. 1980); *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 331 (Tex.1968).

■ The questions posed to Dr. Jachimczyk were all directed to a hypothetical two-and-a-half-year old who had ceased breathing for less than three minutes at the time of discovery. Dr. Jachimczyk was never questioned as whether the administration of CPR to Howard Nemon at the time of discovery would have probably saved the life of Howard Nemon. Under the circumstances of Howard's death it was not possible for Dr. Jachimczyk to address this issue. Howard Nemon was discovered unconscious and not breathing. There is no evidence as to how long he was in that state before discovery. It is possible that he had ceased breathing for more than three minutes before discovery. Howard was brain dead when first examined at the hospital. He may have been brain dead at the time he was discovered. There simply is no evidence that shows a reasonable medical probability that administration of CPR or any other medical treatment would have saved Howard Nemon. Neither is there any evidence that instruction of appellant's employees in emergency procedures would have probably saved Howard's life. Even assuming that the failure to prepare beforehand delayed the arrival of the ambulance, there is no evidence showing a reasonable medical probability that if aid had been rendered by the ambulance service absent any delay caused by appellants Howard would have survived.

Appellees completely failed to prove that the omissions of appellants which the jury found to be negligent proximately caused Howard Nemon's death, without which there can be no liability. Point of error three is sustained.

We reverse the judgment of the trial court and render judgment that appellees take nothing against appellants.