**Reversed and Remanded, and Memorandum Opinion filed August 16, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00308-CV

---

### GINNY BOGGUS OBO JOHN CASEY, Appellant

### V.

### TEXAS RACQUET & SPA, INC., D/B/A WESTSIDE TENNIS & FITNESS, Appellee

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2014-56796**

---

## M E M O R A N D U M   O P I N I O N

In this appeal, we hold that a fitness club failed to meet its summary judgment burden to conclusively negate at least one essential element of the plaintiff's negligence claim relating to the club's failure to train its employees on the use of an automated external defibrillator (AED), as required by the Texas Health and Safety

Code.[1] Thus, we reverse the trial court's summary judgment and remand for further proceedings.

## I. BACKGROUND

John Casey was participating in a cycling class at a fitness club (Texas Racquet & Spa, Inc., d/b/a Westside Tennis & Fitness, hereafter "Club"). He suffered a cardiac event and fell to the floor. A Club employee immediately called 911. About five minutes later, after Casey started turning blue, another Club employee began cardiopulmonary resuscitation (CPR). Although an AED was located nearby, no one used it. Ultimately, emergency medical services personnel arrived and defibrillated Casey. He survived but suffered brain damage and is in a vegetative state.

Ginny Boggus, Casey's wife, sued the Club on behalf of Casey for negligence and gross negligence. In her live pleading, Boggus alleged among other things that the Club failed to (1) administer CPR within an adequate time period; (2) use the AED; (3) properly train employees on the use of the AED; (4) properly train, supervise, or manage the employees at the facility; and (5) comply with Chapter 779 of the Texas Health and Safety Code.

The Club moved for a traditional summary judgment, challenging the elements of duty, breach, and causation for the negligence claim; the Club argued that Boggus could not recover for gross negligence because the Club was entitled to summary judgment on the negligence claim. Boggus filed a response and attached

---

[1] Under the Code, an AED is defined as a heart monitor and defibrillator that "is capable of recognizing the presence or absence of ventricular fibrillation or rapid ventricular tachycardia and is capable of determining, without interpretation of cardiac rhythm by an operator, whether defibrillation should be performed," and "on determining that defibrillation should be performed, automatically charges and requests delivery of an electrical impulse to an individual's heart." Tex. Health & Safety Code § 779.001.

2

evidence, some of which the trial court determined to be inadmissible. The trial court granted the motion and signed a take-nothing judgment. Boggus appeals.

## II. SUMMARY JUDGMENT

In her first issue, Boggus contends that the trial court erred by granting summary judgment to the Club.

### A. Standard of Review

The party moving for a traditional summary judgment has the initial burden to submit sufficient evidence to establish that (1) there is no genuine issue as to any material fact and (2) the movant is entitled to judgment as a matter of law. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). The movant can satisfy this burden by conclusively negating at least one essential element of the plaintiff's claim. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). If the movant satisfies this burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar*, No. 16-0588, 2018 WL 1974473, at *3 (Tex. Apr. 27, 2018). On the other hand, if the movant fails to satisfy its initial burden, then the burden does not shift, and the nonmovant need not present any evidence to avoid summary judgment. *Amedisys*, 437 S.W.3d at 511.

We review issues of statutory construction and summary judgments de novo. *Carreras v. Marroquin*, 339 S.W.3d 68, 71 (Tex. 2011). We must credit evidence favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Lujan*, 2018 WL 1974473, at *3. The purpose of summary judgment is not to deprive a litigant of the right to a jury trial, but to eliminate patently unmeritorious claims. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979).

3

**B.      Waiver**

As an initial matter, the Club contends that the summary judgment on negligence and gross negligence can be affirmed on unappealed grounds. We disagree with the Club.

When, as here, the trial court does not specify the grounds upon which summary judgment was granted, the appellant must negate all grounds on appeal; and if an appellant fails to challenge all grounds on which a summary judgment could have been granted, the appellate court must affirm the summary judgment. *See Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Cmty. Mgmt., LLC v. Cutten Dev.*, L.P., No. 14–14–00854–CV, 2016 WL 3554704, at *3 (Tex. App.—Houston [14th Dist.] June 28, 2016, pet. denied) (mem. op.). Although an issue on appeal generally stating that the trial court erred by granting summary judgment is sufficient to allow argument as to the grounds upon which the summary judgment should have been denied, error is waived if the appealing party fails to support the specific ground with argument. *See Cruikshank v. Consumer Direct Mortg., Inc.*, 138 S.W.3d 497, 502–03 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing Tex. R. App. P. 38.1).

Regarding negligence, the Club contends that Boggus has not challenged on appeal the grant of summary judgment on the ground that the Club did not breach the applicable standard of care as a matter of law. In the first issue presented in its brief, Boggus asks, "After acquiring an AED machine, did [the Club]'s failure to comply with the requirements of the Health Code and the Admin. Code create civil liability for damages caused by such negligence?" Within the discussion of her first issue, Boggus includes a sub-heading "Breach of Duty" with three pages of analysis supported by citation to authority and the record. We hold that Boggus has

4

challenged the trial court's grant of summary judgment on the element of breach, and therefore, has not waived error regarding the propriety of the summary judgment on the negligence claim. *Cf. id.*

The Club sought summary judgment on Boggus's entitlement to exemplary damages for gross negligence solely because Boggus could not recover actual damages on Boggus's negligence claim. Thus, summary judgment on gross negligence is dependent on the Club's entitlement to summary judgment on negligence. *Cf. Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (reasoning that "negligence and gross negligence are not separable causes of action but are inextricably intertwined" (quoting *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998) (Gonzalez, J., concurring))). Because Boggus challenges the basis for the summary judgment on gross negligence—i.e., summary judgment on negligence—and fully briefs the issue, Boggus has not waived the issue due to inadequate briefing. *See Perry v. Cohen*, 272 S.W.3d 585, 587–88 (Tex. 2008) (reasoning that appellate courts should reach the merits of an appeal whenever possible, that appellate briefs should be construed reasonably and liberally so that the right to review is not lost by waiver, and that issues are liberally construed to obtain a just, fair, and equitable adjudication).

Accordingly, we will reach the merits of Boggus's appeal.

## C. Duty

In its motion for summary judgment, the Club argued that it owed no common law duty to perform CPR on Casey, to administer the AED, or to train its employees to use the AED. The Club argued in the motion that the Club had no special relationship with Casey that would require the Club to render first aid, but even if it did, the duty did not include a duty to perform CPR or use an AED, citing *Applebaum v. Nemon*, 678 S.W.2d 533 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.),

5

and *Potter v. 24 Hour Fitness USA Inc.*, No. 3:12-CV-453-P, 2014 WL 11633691 (N.D. Tex. June 6, 2014), *aff'd*, 597 Fed. App'x 796 (5th Cir. 2015). The Club argued that it owed no duty "to train its employees to immediately use AEDs in all emergency situations" because the Club owed no duty to possess or use an AED.

In her response to the motion and on appeal, Boggus does not address any potential common law duty to administer CPR or use the AED, nor does Boggus contend that the Legislature has created a duty to administer CPR or use an AED.[2] Boggus contends that the Club's duty to train its employees is imposed by Chapter

---

[2] Because Boggus does not urge for the application of a common law duty to render aid under Section 314A of the Restatement (Second) of Torts, we do not dwell on the potential duty discussed in *Applebaum*. *Compare* Restatement (Second) of Torts § 314A (landowner owes invitee a duty to take reasonable action to give the invitee first aid after the landowner knows or has reason to know that the invitee is ill or injured), *cited in Applebaum*, 678 S.W.2d at 535–36, *with* Deposition of Linda McIngvale, 1 CR 271, 275 (owner of the Club testifying that she did not require AED training because she "would never make one of [her] employees have to render aid"; analogizing an AED to "having a first aid kit that you have band-aids available if somebody needs them" because "anyone can use an AED" and when "you take it out, it steps you through it step by step by step and that it's available in public locations because anybody could take it off the wall and—and use it").

We note that *Applebaum* held that a childcare center with a special relationship to the plaintiff—such as landowner and invitee—was not required "to have medically trained employees who can administer CPR" absent regulations promulgated by the state. 678 S.W.2d at 535–37. *But see* 26 Tex. Admin Code § 746.1315 (subsequent regulations require childcare centers to have caregivers trained in CPR). *Applebaum* did not address the separate question of whether a defendant may be required to administer CPR, or other life-saving measures, to a plaintiff owed a duty of reasonable care under Section 314A if the defendant "reasonably can and knows how to do it." *See* 678 S.W.2d at 536 (holding that a defendant with a landowner–invitee relationship must "administer whatever initial aid he reasonably can and knows how to do"); *see also* Deposition of Stephanie Hirschfield, 1 CR 372, 374–75, 382–83 (Club employee who saw Casey fall off the bike was trained in CPR and AED, knew that defibrillation should occur as soon as possible if someone has a cardiac event, knew that Casey's pulse was going "back and forth," knew that the AED was located within a ten-second walk from Casey, and would have gotten the AED if someone had mentioned it). *See generally Verdugo v. Target Corp.*, 327 P.3d 774, 794 & n.28 (Cal. 2014) (collecting cases concerning whether fitness clubs had a duty to acquire or administer AED; holding that a large department store chain had no common law duty to acquire an AED; and distinguishing cases involving fitness clubs because those cases imposing a duty "relied upon the heightened foreseeability of sudden cardiac arrest in the fitness studio setting").

779 of the Texas Health and Safety Code: "Any person or entity that acquires an automated external defibrillator and negligently fails to comply with the requirements of this chapter is liable for civil damages caused by such negligence." Tex Health & Safety Code § 779.006. The statute also provides that an entity that acquires an AED and *meets* the requirements of Chapter 779 is not liable for civil damages for the acquisition unless the entity's conduct is willfully or wantonly negligent. *See id.*

Under Chapter 779, as the Club acknowledged in its motion for summary judgment, entities that acquire an AED are required to ensure that users are trained:

> (a) A person or entity that acquires an automated external defibrillator shall ensure that:
>
> > (1) each user of the automated external defibrillator receives training given or approved by the Department of State Health Services in:
> >
> > > (A) cardiopulmonary resuscitation; and
> > >
> > > (B) use of the automated external defibrillator; and
> >
> > (2) a licensed physician is involved in the training program to ensure compliance with the requirements of this chapter.
>
> (b) The executive commissioner of the Health and Human Services Commission shall adopt rules establishing the minimum requirements for the training required by this section. In adopting rules under this section, the executive commissioner shall consider the guidelines for automated external defibrillator training approved by the American Heart Association, the American Red Cross, or another nationally recognized association.

*Id.* § 779.002. The executive commissioner adopted various rules under subsection (b), including that:

> A person acquiring and/or using an AED shall successfully complete a training course in CPR and AED operation in accordance with the guidelines established by the device's manufacturer and as approved by the American Heart Association, the American Red Cross, other

7

nationally recognized associations, or the medical director of the local emergency medical services provider.

25 Tex. Admin. Code § 157.41(d)(1). Furthermore, an "entity that acquires the AED should assure," among other things, that "a core of trained users is retained." *Id.* § 157.41(f)(5).

For the first time on appeal, the Club contends that Section 779.006 does not create a private cause of action for an entity's failure to train users or otherwise comply with Chapter 779 and the attendant regulations. We cannot affirm the summary judgment on this ground because it was not expressly set out in the motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Regardless, the plain language of the statute evidences the Legislature's intent to create a private cause of action. *See Brown v. De La Cruz*, 156 S.W.3d 560, 563–65 (Tex. 2004) (noting distinction between Legislature's use of "penalty" versus "damages" when creating private cause of action). The statute expressly provides for an entity's liability for "damages" if the entity acquires an AED and negligently fails to comply with Chapter 779, which includes a requirement to ensure that users are trained. *See* Tex. Health & Safety Code § 779.006; *see also id.* § 779.002

The Club contends that the statute only applies to "users," so "the statute and regulations are intended to apply when AEDs are used, not merely acquired." We disagree with the Club. The plain language of the liability provision applies to an "entity that acquires" an AED. *See id.* § 779.006. The duty to "ensure" training of users is on the "entity that acquires" the AED. *See id.* § 779.002(a). Thus, the Club's interpretation of the statute—that the duty to ensure training only applies if an AED is "used"—is unreasonable. *See Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016) (statute is ambiguous only if there is more than one reasonable interpretation).

Furthermore, the Legislature conferred upon the Health and Human Services Commission the power to make rules and regulations concerning the training requirements. *See* Tex. Health & Safety Code § 779.002(b); *see also Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 454 (Tex. 2008). One of those rules is for any person "acquiring" an AED to be trained. *See* 25 Tex. Admin. Code § 157.41(d)(1). And, an entity that acquires an AED "should assure . . . that a core of trained users is retained." *Id.* § 157.41(f)(5).

In sum, the statute and regulations provide for an entity acquiring an AED, such as the Club, to train users and assure that trained users are retained. Nothing in the Club's motion negated this duty as a matter of law in this case. Thus, the Club failed to meet its summary judgment burden regarding the element of duty.

### D.     Breach

In its motion for summary judgment, the Club argued that, as a matter of law, the Club "complied with whatever duties it may have owed to Casey after his medical event began." The Club did not, and does not on appeal, argue or cite to any evidence to show that it complied with Chapter 779's AED training requirement. Thus, the Club failed to meet its summary judgment burden to negate the breach of an applicable duty as a matter of law, and we cannot affirm on this basis. *See Stiles*, 867 S.W.2d at 26.

Furthermore, Boggus referred the trial court and this court to some evidence raising a genuine issue of material fact concerning whether the Club met its duty to train users. One of the Club's two owners testified that she was not aware of the training requirement, that she did not require training of any Club employees, and that she did "nothing" to ensure that employees would use an AED when needed except "put them on the wall."

9

## E.    Causation

In its motion for summary judgment, the Club argued that Casey's injuries or damages were not proximately caused by a failure to comply with Chapter 779. The Club did not cite to any evidence, or any legal authority other than a single case referring to the general requirement of proving causation. The Club referred to no specific requirement in Chapter 779, and the Club argued that the Club owed no duty to inform the 911 operator of the availability of the AED. The Club did not refer to Boggus's allegation concerning the duty to train employees until the Club filed a reply to Boggus's response, in which the Club argued that there was "no evidence" to show that training in compliance with the AED statute would have resulted in the Club's employees using the AED.

But the Club's motion was for a traditional summary judgment, not a no-evidence one. Because Boggus identified the lack of training as a proximate cause of Casey's injuries in her live pleading, it was the Club's burden to negate the allegation. *See Castillo v. Westwood Furniture, Inc.*, 25 S.W.3d 858, 862 & n.2 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The Club did not meet this burden because it did not adduce any evidence or legal authority to show that the lack of training was not a proximate cause of Casey's injuries. *See id.* at 861 (defendant with burden of conclusively negating causation element of plaintiff's claim could not meet its burden on motion for traditional summary judgment by focusing on what plaintiff failed to prove, even though plaintiff's deposition testimony would have been insufficient to raise a fact issue if cited by plaintiff in response to a motion for no-evidence summary judgment).

The burden to raise a fact issue did not shift to Boggus because the Club did not meet its initial burden to show entitlement to a judgment as a matter of law. *See id.* at 861–62. Thus, we need not refer to the summary judgment evidence that

Boggus submitted to the trial court—concerning alleged training materials—to determine if Boggus raised a genuine issue of material fact as to whether a lack of training was a substantial factor in bringing about Casey's injuries. *See id.* at 862 (plaintiff did not need to present any evidence of causation when the defendant failed to meet its initial burden of negating the element of causation).[3]

Boggus's first issue is sustained.

### III.  CONCLUSION

Having sustained Boggus's first issue, we reverse the trial court's summary judgment and remand for further proceedings.

/s/     Ken Wise
         Justice

Panel consists of Justices Boyce, Donovan, and Wise.

---

[3] Because we do not refer to the alleged training materials, which the trial court struck while sustaining the Club's objections, we do not address the parties' arguments concerning the trial court's rulings on the Club's objections. *See* Tex. R. App. P. 47.1.

11