**Helen J. LLOYD, Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 304–61.**

United States District Court
S. D. California,
Central Division.

Dec. 17, 1962.

Abrams & Fox, by Harry D. Fox, El Monte, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., by Clarke A. Knicely, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

This action was instituted by Helen J. Lloyd against the United States of America under the Federal Tort Claims Act. (28 U.S.C.A. § 1346(b) and § 2671 et seq.) The Complaint alleged that the plaintiff at La Puente, California, on November 9, 1960, tripped in front of the United States Post Office. It was claimed that her tripping was caused by the negligent manner in which Eusebio Otero, an employee of the defendant, "pulled up a hose across a doorway by which plaintiff was leaving the premises".

The allegation was denied in the answer. But, as will appear further on in the opinion, the Government's defense was limited to the question of agency and the nature of the disability, if any, caused by the injury.

The first problem presented is whether Otero was an employee of the Post Office department *acting within the scope of his employment*. The Federal Tort Claims Act defines the phrase in this manner:

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. * * *

June 25, 1948, c. 646, 62 Stat. 982, amended May 24, 1949, c. 139, § 124, 63 Stat. 106." (28 U.S.C.A. § 2671)

█ A review of the record leads me to the conclusion that Otero was an employee of the Government and was acting within the scope of such employment when the injury occurred. Otero was performing custodial or janitorial services in and about the Post Office. His compensation was fixed by contract on a yearly basis, compensation being paid semi-monthly. The amount was computed on the basis of a certain yearly rate which changed several times and a minimum of hours

was required to be worked each month. The work was done under the direction of the local Postmaster who, on numerous occasions, inspected the premises to see that they were kept tidy and clean and ordered additional work done if he did not find them so.

The yearly contract was merely a method to insure *permanency* of employment with no *sporadic* variations in the rate of pay.

■ The measure of liability under the Federal Tort Claims Act is stated in the Statute in this manner:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances.*" (28 U.S.C.A. § 2674) (Emphasis added)

This means that the liability of the Government will be judged in the same manner that the liability of a private individual would be judged under State law. (United States v. Brown, 1954, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139; The Tungus v. Skovgaard, 1959, 358 U.S. 588, 592–594, 79 S.Ct. 503, 3 L.Ed.2d 524; Hess v. United States, 1960, 361 U.S. 314, 317–320, 80 S.Ct. 341, 4 L.Ed.2d 305. And see the writer's article "Problems Under Federal Tort Claims Act," 1949, 9 F.R.D. 143, 155–165 and cases cited in footnotes 67 to 109 inclusive.)

Under the law of California the test by which it is determined whether a relationship of employer-employee exists is

"The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, *whether exercised or not,* gives rise to the employment relationship." (Miller v. Long Beach Oil Development Company, 1959, 167 Cal.App.2d 546, 550, 334 P.2d 695, 697) (Emphasis added)

Where the work is done on the premises of an owner of property who contracts it to be done, the property becomes "the place of employment" and the owner is "an employer" of the person doing the work. (California Labor Code, §§ 6302 and 6304; Johnson v. A. Schilling & Co., 1959, 170 Cal.App.2d 318, 322, 339 P.2d 139; Kingery v. Southern California Edison Co., 1961, 190 Cal.App.2d 625, 633, 12 Cal.Rptr. 173). And generally when a question arises as to the nature of a relationship of this character, the criterion adopted is not

"what the parties call a relationship * * *. Rather, it is what a party does or is authorized to do which determines the status." (Founders' Insurance Company v. Rogers, 9 Cir., 1960, 281 F.2d 332, 337).

So here the evidence in the record warrants the conclusion that, regardless of the manner in which the parties characterized the agreement, in reality, a relationship of employer-employee arose. To the facts already given may be added the fact that Otero was allowed by the postal authorities to apply for retirement as a federal employee. The conclusion is, therefore inescapable that the injury was brought about by the negligent act of an employee of the Post Office Department.

The Government offered no evidence to contradict the plaintiff's testimony as to the nature and extent of her injury except a medical report by a Government chosen physician who examined her just before the trial. The report concluded that, at that time, *December 5, 1962,* she was *no longer* suffering from any effect of the injury. The report of one of the physicians who examined her at the Los Angeles County General Hospital on *February 23, 1962* found her condition neurologically negative. From this one gathers that he found no objective confirmation of her complaints on that date.

■ In the light of these medical findings the plaintiff's claim that she is still, at the present time, suffering from the effect of the injury and, hence, is *permanently disabled,* cannot be accepted. Her recovery should be limited to the medical and other expenses incurred to date and her general damages should be confined to a *temporary disability* which

began on the day of the accident and terminated prior to February 23, 1962, due weight being given to the fact that, except for a period of sixteen days at no time did the injury prevent her from carrying on her occupation as a psychiatric practical nurse or to do her home and other customary work or to engage in her usual activities.

Judgment will therefore be for the plaintiff that she recover of and from the defendant the sum of $7500.00 as general damages and $581.16 as special damages or a total of $8,081.16. The special damages are computed in the following manner:

| | |
|---|---:|
| Special medical service | $225.16 |
| Special supports ordered by General Hospital | 100.00 |
| Loss of wages for a period of sixteen days | 256.00 |

Costs to the plaintiff.