**Luis LEVRIE and Henry Rodriguez, Plaintiffs-Appellants,**

v.

**DEPARTMENT OF ARMY and United States of America, Defendants-Appellees.**

**No. 86–2326
Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1987.

Gary A. Scarzafava, Law Office of Gary Scarzafava, San Antonio, Tex., for plaintiffs-appellants.

Gordon D. Laws, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for defendants-appellees.

Before RUBIN, RANDALL and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Luis Levrie and Henry Rodriguez appeal from entry of judgment following a bench trial in favor of the Department of Army and the United States on all claims. The action arises out of injuries Levrie and Rodriguez sustained when they cleaned up a hazardous chemical solution in a utility room of the Brooke Army Medical Center at Ft. Sam Houston, Texas. At the time of their injuries, Levrie and Rodriguez worked for Williams Building Maintenance, Inc., an independent contractor, which supplied housekeeping services at the medical cen-

ter. The court ruled that the defendants were not responsible for the negligence of independent contractor Williams and the plaintiffs. We affirm.

## I

Levrie and Rodriguez were employed by Williams to perform housekeeping services at Brooke Army Medical Center. On December 2, 1981, the Williams foreman assigned them to strip the floor in a utility room between two wards occupied by patients of the medical facility. The utility room contained medical supplies and chemicals.

Although proper procedure required Levrie and Rodriguez to remove everything from the floor before applying the stripping solution, which contained a mixture of water and ammonia-based stripper, the two men failed to remove a jar of chlorine from beneath the sink. After Rodriguez applied the solution, Levrie began to operate a buffing machine. Levrie slipped and lost control of the buffer, which struck and tipped over the jar of chlorine. The stripping solution and the chlorine chemically reacted, emitting noxious gases.

The two men attempted to clean up the chemical spill with a water vacuum for approximately thirty minutes, but were made sick by the fumes from the spill. Levrie tried to open a window in the room, but it was sealed shut. Rodriguez then went to a nurse's station to get help, where he spoke to the doctor in charge of the ward. He explained that there was a chemical spill in the utility room and asked for masks. The doctor gave him two surgical masks and instructed him to get the patients out of danger, to close the double doors to the wards, and to clean up the spill.

Levrie and Rodriguez then took turns cleaning up the spill. About two hours after finishing the job, the two men located their foreman and were taken to the emergency room at the medical center. As a result of the incident, the two men suffered chemical burns to their sinus and pulmonary tract, and now suffer permanent impairment.

Levrie and Rodriguez, after exhausting their administrative remedies, sued the Department of Army and the United States in the United States District Court for the Western District of Texas under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, alleging that agents of the United States were negligent in failing to provide a safe workplace; in failing to provide them with masks, ventilation, or other proper protective devices; in failing to render adequate aid;[1] and in instructing them to clean up the hazardous spill. The district court ruled that Williams was an independent contractor and that the hazard arose out of the work for which Williams was employed. Because it found that the government did not exercise control over the operations of Williams, the court found the government had no duty with regard to the hazard and was not negligent in any way.

On appeal, Levrie and Rodriguez argue that the district court erred by admitting evidence of independent contractor Williams' negligence. They also argue that the district court committed clear error (1) when it found that the Army and the government, as owner and occupier of the hospital property, did not have to act for the protection of the employees of an independent contractor with regard to the hazard, and (2) when it found the plaintiffs themselves to be negligent.

## II

Under Texas law, the negligence of an employer cannot be considered in a claim by an injured employee against a third party. *See, e.g., Varela v. American Petrofina Co.*, 658 S.W.2d 561, 562 (Tex. 1983). Because the Federal Torts Claims Act incorporates the law of the state where

---

1. This claim was dismissed below because the plaintiffs failed to raise it during the administrative proceedings.

the accident occurred, 28 U.S.C. § 1346(b), Levrie and Rodriguez argue that the district court incorrectly admitted evidence of Williams's duties and responsibilities as proof that the government was not negligent.

This argument is not well considered. The United States is immune from suit except to the extent that it consents to be sued. *See McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). The Federal Torts Claims Act subjects the United States to liability for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. 1346(b). "'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency...." 28 U.S.C. § 2671. "'Federal agency' includes the executive departments and independent establishment of the United States, ... but does not include any contractor with the United States." *Id.* This statute, like all statutes waiving the sovereign immunity of the United States, is to be strictly construed. *McMahon*, 342 U.S. at 27, 72 S.Ct. at 19.

■ Under the terms of the Federal Torts Claims Act, the United States is not liable for the negligence of a government contractor. *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973); *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir.1979). This exception to the waiver of sovereign immunity takes precedence over Texas law. The district court therefore correctly admitted the evidence of Williams' duties and responsibilities under the government contract, and correctly considered the negligence of Williams and the individual plaintiffs in evaluating their claims. Without such evidence, the United States might have been found liable for the negligent acts of Williams and its employees.

## III

Levrie and Rodriguez next attack on two separate theories the district court's finding that the government was not negligent. First, they argue that the defendants controlled the Williams' operations and were therefore liable unless the defendants properly supervised Williams' activities. Second, they argue that the defendants, as owners and occupiers of the property, owed a duty to protect the plaintiffs from unreasonable harm or danger on the premises.

### A

■ Under Texas law, the owner of property has a general duty to use reasonable care to keep the premises under his control in a safe condition. This duty may subject the owner to liability for negligence in two situations: (1) those arising from a defect in the premises, and (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). This case involves the latter.

Texas law provides generally that a property owner does not have a duty to ensure that an independent contractor performs his work in a safe manner. *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). Nor does the owner have a duty to protect the contractor's employees from hazards that are incidental to, or part of, the work the independent contractor is hired to do. *Shell Oil Co. v. Songer*, 710 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1986, no writ). However, when the owner of the premises exercises control over or interferes with the contractor's performance of his work, the owner may be liable unless he exercises reasonable care in supervising the contractor's activity. *Redinger*, 689 S.W.2d at 418. In *Redinger*, the Texas Supreme Court stated that supervisory control might consist of the power to direct the order in which work shall be done or power to forbid its being done in a dangerous manner. *Id.*

The district court found that the defendants did not control the operations of Williams within the meaning of Texas law. This is a finding of fact, which we review under the clearly erroneous standard:

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence the fact-finder's choice between them cannot be clearly erroneous.

*Galvan v. Bexar County*, 785 F.2d 1298, 1299 (5th Cir.1986) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)); *see* Fed.R.Civ.P. 52(a). Levrie and Rodriguez nevertheless contend that the evidence established that the defendants controlled the operations of Williams. They cite two examples of such control: (1) that a government employee once asked Rodriguez to clean one-half of the cafeteria first so that the other side could be used for dining, and (2) that a government employee once asked Williams employees to reduce the use of stripping solution in the medical ward because it was bothering patients. Additionally, they cite the incident giving rise to this suit as evidence of control, since the military doctor instructed them to clean up the spill.

We are persuaded that the district court's finding is not clearly erroneous. The evidence established that Williams employees received their assignments and directions from the Williams foreman and supervisors only. Samuel Miller, the hospital housekeeping officer and representative on the Williams contract, testified that hospital staff could not give directions to Williams employees, that to do so would be out of line. Finally, the two incidents cited by the plaintiffs did not involve control over the manner of performance, but were mere requests for comfort and convenience only.

Nor does the incident underlying this suit establish control over the independent contractor. The doctor merely asked the plaintiffs to do that which they were contractually bound to do, clean up the spill. She did not direct how they were to do so, nor did she require that they do it immediately and without the proper equipment. Nothing she said prevented the plaintiffs from sealing the room and seeking the advice of their foreman, which proper procedure required that they do in the case of an accident.

**B**

Levrie and Rodriguez urge that even if the defendants asserted no control over the performance of Williams employees, they still owed a duty as landowner and occupier to ensure that the premises were safe and to protect and aid those found in danger on the premises. As precedent for this proposition, they cite *Applebaum v. Nemon*, 678 S.W.2d 533 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), in which the Nemons sued a day care center, its officers and employees for the wrongful death of their two-year old son Howard. Although the jury found that the cause of the injury could not be determined, it found the day care center negligent in failing to provide adequate life-saving aid and in failing to adequately train its employees for such circumstances. Affirming the liability of the day care center, the Texas Court of Appeals adopted Section 314A of the Restatement (Second) of Torts, which provides that a possessor of land is under a duty to its business invitees to protect them against unreasonable risk of physical harm, and to render aid after it knows or has reason to know that they are ill or injured. 678 S.W.2d at 535–36.

Levrie and Rodriguez argue that the government is liable for the failure of its agents to protect the plaintiffs from harm after being notified of the chemical spill under §§ 314A, 314B, and 343 of the Restatement (Second) of Torts. The plaintiffs, however, have pointed us to no cases which have applied the doctrine of § 314A to protect the employees of independent contractors from hazards which arise from the performance of the contract. *Applebaum* did not involve such a circumstance. Extension of the *Applebaum* precedent to independent contractors would undermine a

long line of Texas cases that have held that a landowner is under no duty to the employees of independent contractors so long as the landowner exercises no control over the manner of contractual performance. *See, e.g., Redinger,* 689 S.W.2d at 418; *see also Thomas v. Internorth, Inc.,* 790 F.2d 1253, 1254 & n. 1 (5th Cir.1986) (noting the long line of Texas precedent on this issue).

Neither does § 314B provide precedent for such liability. Section 314B imposes a duty on an employer to his employee when the employee, acting within the scope of his duties, comes into a position of imminent danger of serious harm. Levrie and Rodriguez argue that this section is incorporated through comment a to § 314A, and is therefore applicable to the defendants. However, since we have declined to apply § 314A to this case, § 314B cannot apply by incorporation either.

■ Finally, Levrie and Rodriguez argue that the government is liable under § 343, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by exercise of reasonable care would discover the condition and realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

However, Williams had superior knowledge of what dangers could be encountered by its employees, and warranted in its contract that it trained these employees adequately. Because "the dangerous condition was peculiar to the technical specialty for which Williams was employed," the defendants could reasonably expect the plaintiffs to realize the danger and to protect themselves against it. Section 343 therefore does not apply.

In any event, the district court found that the government acted reasonably under the circumstances. Because the contract required Williams to provide trained employees and to clean up hazardous spills, the government employee was not negligent in looking to the Williams employees to alleviate the problem. The court noted that because of Williams' technical expertise, it "was in a superior position to prevent the occurrence, and to safely remedy the hazard." The doctor had a right to rely on the expertise of the Williams employees.

■ The court also ruled that the doctor was not negligent in providing the surgical masks to Levrie and Rodriguez, for Rodriguez asked for the masks which she provided. Under the contract, Williams was required to provide proper equipment to its employees. The government was under no duty to ensure that proper equipment was available and used. The court found that provision of the mask did not constitute an assumption of this obligation, but was merely a response to a request by trained personnel. We cannot say on this record that this decision was clearly erroneous.

## IV

Finally, Levrie and Rodriguez argue that the district court erred in finding them negligent because the evidence was insufficient to establish that they appreciated the danger of the fumes. Because we have found that the district court correctly ruled that the government was not negligent, we need not address this issue.

## V

The judgment of the district court is AFFIRMED.