**Evelyn CUPIT, plaintiff,**

**v.**

**UNITED STATES of America, et al., defendant.**

**Civil Action No. 96–0516.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 10, 1997.

Darrel Dee Ryland, Joseph B. Trueting, Marksville, LA, for Plaintiff.

John Robert Halliburton, U.S. Attorney's Office, Shreveport, LA, for Defendant.

## RULING

LITTLE, Chief Judge.

Before this court is an alternative motion to dismiss or for summary judgment filed by defendant the United States of America. For the reasons that follow, the motion is GRANTED in part and DENIED in part. Plaintiff's claims against the United States under strict liability and general premises liability, only, are DISMISSED with prejudice.

## I. *Procedural Background and Introduction*

This civil suit arises from injuries plaintiff Evelyn Cupit sustained after tripping over a rolled rug and falling to the concrete at a United States Postal Service (the "Postal Service") office in Simmesport. Louisiana. Cupit filed suit in this court on 6 March 1996 and amended her complaint on 20 November 1996. The amended complaint named as defendants the United States of America and David McGlothin d/b/a Avoyelles Carpet Cleaners (hereafter "McGlothin").[1] The amended complaint alleged that McGlothin was performing cleaning services at the time of the accident, and "was acting with the

---

**1.** Cupit's opposition to this motion and the attached deposition transcript spell the defendant's name "McGlothlin." The alternate spellings refer to the same person. We will use the spelling from the amended complaint.

permission and knowledge, if not as an agent" of the United States. Cupit asserted that defendants were liable for her injuries under theories of strict liability and negligence. In particular, Cupit alleged that defendants were liable for negligent: (1) failure to warn the public of a danger; (2) failure to provide a safe method to exit the Post Office; (3) failure to provide warning signs disclosing the existence of the hidden rug; (4) supervision of mopping and waxing; and (5) supervision of McGlothin. The United States filed the instant alternative motion on 7 February 1997, seeking dismissal under Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, or summary judgment under Rule 56.

The United States contends that dismissal or summary judgment in its favor is mandated for three reasons: (1) the United States is immune to strict liability claims; (2) the United States is not liable for the negligence of McGlothin because he is an independent contractor, and the government has not waived immunity for negligence by independent contractors, and (3) under the undisputed facts the United States is not liable for negligence under Louisiana law. We also consider a fourth issue raised implicitly, whether the United States may be liable for general premises liability under the Federal Tort Claims Act (the "FTCA").

We begin our analysis by considering under which claims the United States has created subject matter jurisdiction by waiving immunity. We conclude that in the FTCA the United States has consented to be sued only for the negligence of its employees. We therefore dismiss Cupit's claims against the United States for strict liability and general premises liability We then question if the United States is entitled to summary judgment on Cupit's claims of negligence by Postal Service employees. We conclude that summary judgment is not merited.

## II. Treatment of Alternative Motion

If in a motion to dismiss for failure to state a claim, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment under Rule 56. Fed. R.Civ.P. 12(b); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir.1990). A motion for summary judgment may be filed by a defendant at any time. Fed.R.Civ.P. 56(b). Rule 56(c) requires that the nonmovant have ten days within which to respond to a motion for summary judgment.

In this case, the United States titled its motion as an alternative motion to dismiss or for summary judgment and submitted evidence outside the pleadings. Cupit was on notice that the court could treat the instant motion as one for summary judgment and that she should come forward with all of her evidence. *Washington*, 901 F.2d at 1284. Cupit opposed the summary judgment motion, submitting her own supplemental evidence.

■ Where dismissal is sought for a lack of subject matter jurisdiction, however, the proper procedural form is a Rule 12(b)(1) motion to dismiss, not summary judgment. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156–57 (5th Cir.1981). When considering a Rule 12(b)(1) motion to dismiss with a motion for summary judgment in the alternative, we must determine if subject matter jurisdiction is present before considering the substantive arguments of the summary judgment motion. *Id.* at 1157. We thus analyze subject matter jurisdiction first in this case, and consider the summary judgment motion only after concluding that dismissal of all claims against the United States for lack of subject matter jurisdiction is not warranted.

## III. Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ The district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).

The United States does not challenge the face of the complaint, in that the complaint asserted subject matter jurisdiction under

the FTCA, 28 U.S.C. § 1346(b)(1). Cupit alleged in her complaint that negligent acts by employees of the United States, while acting within the scope of their employment, caused her personal injuries.[2] The district court has exclusive jurisdiction over civil actions against the United States for money damages for personal injury caused by the negligent or wrongful acts or omissions "of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The United States instead submitted factual evidence on the issue of subject matter jurisdiction. Cupit submitted evidence disputing the evidence presented by the United States and purporting to demonstrate subject matter jurisdiction. We are called upon to make factual findings to determine subject matter jurisdiction. The question is what standard we should use to make our factual findings.

■ Where the factual findings regarding subject matter jurisdiction are "intertwined with the merits," the motion to dismiss is treated as an attack on the merits. *Clark v. Tarrant County, Texas,* 798 F.2d 736, 741–42 (5th Cir.1986). Subject matter jurisdiction and the merits are considered "intertwined" where the same statute provides both the basis for subject matter jurisdiction and the cause of action. *Id.* at 742. In this case, the FTCA, 28 U.S.C. § 1346(b)(1), provides the basis both for jurisdiction and the cause of action against the United States. *See Augustine v. United States,* 704 F.2d 1074, 1077–78 (9th Cir.1983). In such a case we approach the jurisdictional challenge as an attack on the merits and employ the standard applicable to a motion for summary judgment. *Clark,* 798 F.2d at 742; *Augus-*

*tine,* 704 F.2d at 1077; *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995).

We accordingly view the jurisdictional challenge of the United States in this case as an attack on the merits. in that the merits and jurisdictional facts are intertwined. We will assess subject matter jurisdiction using a summary judgment standard.[3]

## IV. *Summary Judgment Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmovant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202, 212–13 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2509–10. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986), the nonmovant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e): *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for

---

2. The complaint also alleged. and the United States has not contested, that Cupit satisfied the jurisdictional requirements of 28 U.S.C. § 2675(a). That section requires a claimant to present her claim to the appropriate federal agency prior to instituting her suit in federal court. 28 U.S.C. § 2675(a). *See Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980).

3. We have considered, and rejected, the possibility of an evidentiary hearing on the jurisdictional issue. Such a hearing would be of little utility in that subject matter jurisdiction is easily satisfied by Cupit's negligence claims against the United States based on the acts or omissions of Voiselle, Chesne, and Descant, and that we can revisit this issue at trial.

trial. *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

### V. *Facts*

We find the following material facts to be undisputed, except where specifically noted. Cupit visited the Simmesport Post Office on Saturday morning, 25 February 1995, for the purpose of checking two postal boxes. Cupit entered and exited the building through the front. public doors. The doors were unlocked at the time of Cupit's entrance and exit. Cupit does not recall seeing a rolled rug near the doorway when she entered the building. She does not recall noticing any warning signs about the rug. She spent approximately five minutes in the Post Office. Upon exiting the building Cupit tripped on a commercial interior rug that was placed in a loose roll outside the front doorway. The rug was owned by the Post Office. Cupit claims the rug was placed on the ground approximately two steps past the door and was protruding into the walkway. Defendants dispute the precise location of the rug. Cupit caught her left foot on the rug and fell forward onto the concrete. She sustained injuries that required her immediate hospitalization.

Kay Descant was the Postmaster in Simmesport in February 1995. She was not in the Post Office at the time of the accident. Cynthia Voiselle, a part-time flexible clerk and the acting Post Office supervisor, and Lorraine Chesne, a full-time rural carrier for the Post Office, were working in the Simmesport office at the time of the accident. Also working in the building was McGlothin.

McGlothin was hired by Postmaster Descant to perform specified cleaning services in the Simmesport Post Office. Whereas another janitorial worker in Simmesport was hired through a written competitive bid contract arranged by the Postal Service in Dallas, McGlothin was hired by oral contract with Descant. His duties were to strip, wax, and buff the Post Office floors. McGlothin did not carry liability insurance. He supplied his own equipment. He ran his business out of his girlfriend's home. Cleaning work was only a part-time job for McGlothin.

He was also employed as a guard in an Avoyelles Parish jail.

The number of times McGlothin had worked in the Simmesport Post Office prior to 25 February 1995 is in dispute. Descant testified in her deposition that McGlothin had worked only one previous time. McGlothin testified in his deposition that he had stripped and waxed the floor twice and buffed the floor between five and ten times. McGlothin was paid each time with a Post Office money order. For his services on 25 February 1995 McGlothin was to be paid $20–$25.

The specific terms of the oral contract between Descant and McGlothin for his work on 25 February 1995 are disputed. Also disputed is the time McGlothin arrived to start his work. What is undisputed is that the policy of the Simmesport Post Office was for Post Office employees to lock the front doors when McGlothin was buffing the floors in the public area of the building. McGlothin did not have keys to the building. As McGlothin stated in his deposition, "when I did these jobs for the post office, when they would unlock the doors, it wasn't really a whole lot I could say about it." McGlothin Deposition, p. 60:10–13.

When McGlothin arrived at the Post Office on 25 February 1995, he checked in with Voiselle, the acting supervisor. Voiselle called Descant to confirm that McGlothin was supposed to be working. Descant confirmed that McGlothin should be allowed to work.

Prior to buffing the Post Office floor near the entrance, McGlothin rolled up an interior rug and placed it on the concrete outside the front door. This is the rug that caused Cupit's fall. It is disputed whether the front door was ever locked on the morning of the accident. It is also disputed whether there were any warning notices in the Post Office concerning the cleaning work. It is undisputed that there were no notices specifically warning of the danger of the rolled carpet outside the doorway.

### VI. *Motion to Dismiss for No Waiver of Immunity Under the Federal Tort Claim Act*

Resolution of the instant motion to dismiss hinges on interpretation of the Unit-

ed States' waiver of sovereign immunity under the FTCA. The United States is immune from suit except to the extent that it consents to be sued. *See McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *Levrie v. Dept. of Army,* 810 F.2d 1311, 1314 (5th Cir.1987). Statutes waiving the sovereign immunity of the United States, including the FTCA, are to be strictly construed. *Id.* We consider below the immunity of the United States to each of Cupit's claims.

### A. *Strict Liability Claim*

■ The FTCA precludes liability of the United States based on strict liability in tort. *See Lathers,* 687 F.2d at 72; *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). Cupit's strict liability claim against the United States accordingly is dismissed. The dismissal is with prejudice because allegations of other facts consistent with the challenged pleading could not possibly cure the defect. *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir.1986).

### B. *Negligence by McGlothin*

The FTCA subjects the United States to liability for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b). " 'Employee of the government' includes officers or employees of any federal agency, ... and persons acting on behalf of a federal agency in an official capacity, temporarily, or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. " 'Federal agency' includes the executive departments and independent establishments of the United States, ... but does not include any con-

tractor with the United States." 28 U.S.C. § 2671; *see Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

The United States argues that we should dismiss Cupit's claim for negligence committed by McGlothin because McGlothin was not an employee of the United States under the FTCA. There is no dispute that the Postal Service is a federal agency under the FTCA. *See, e.g., Eure v. U.S. Postal Service,* 711 F.Supp. 1365 (S.D.Miss.1989). The pivotal question is whether McGlothin was a Postal Service employee. For the United States to be liable for the negligence of McGlothin, he must be shown to be an "employee of the Government" as that term is used in the FTCA. 28 U.S.C. § 2671; *Logue,* 412 U.S. at 526, 93 S.Ct. at 2218-19, 37 L.Ed.2d at 127. Conversely, if McGlothin was a contractor, the United States is not liable for his negligent acts or omissions. *Logue,* 412 U.S. at 528, 93 S.Ct. at 2219, 37 L.Ed.2d at 128.

The question of whether McGlothin was an independent contractor under the FTCA is analyzed under federal law. *Id.; Broussard v. United States,* 989 F.2d 171, 174 (5th Cir.1993). The critical factor in making this determination is "the authority of the principal to control the detailed physical performance of the contractor." *Logue,* 412 U.S. at 528, 93 S.Ct. at 2219, 37 L.Ed.2d at 128 (relying upon Restatement (Second) of Agency § 2 (1958)). Added to this analysis is whether the "day-to-day operations" of the employee/contractor were supervised by the federal government. *United States v. Orleans,* 425 U.S. 807, 815, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). There are, however, other factors set forth in the Restatement (Second) of Agency which may be considered by the courts to define the employment relationship.[4] *Broussard,* 989 F.2d at 175 (citing

---

4. In determining whether one is acting as an employee or independent contractor, the following factual matters may be considered: (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distract occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; and (10) whether the principal is or is not in business. Restatement (Second) Agency § 220(2).

Restatement (Second) of Agency § 2 cmt. a). The Fifth Circuit has classified the Supreme Court's flexible FTCA analysis in *Logue* and *Orleans* as the "daily-detailed-control" test for government employment status. *Cavazos By and Through Cavazos v. United States,* 776 F.2d 1263, 1264 (5th Cir.1985).

The United States contends that under the "daily-detailed-control" test McGlothin is an independent contractor. The government cites four appellate cases. Each· is instructive.

In *Lathers v. Penguin Industries, Inc.,* 687 F.2d 69 (5th Cir.1982), the Fifth Circuit analyzed whether Gearheart–Owen, Inc. ("GOI"), a munitions manufacturer that assembled hand grenade fuses under a government contract, was an independent contractor under the FTCA. An explosion at the GOI plant killed and injured numerous employees. The court concluded that GOI was an independent contractor, so the government was not liable under the FTCA. 687 F.2d at 74. The key to the court's conclusion was that the government "did not control the manner in which the operative details of the work were performed" by GOI. *Id.* at 73. GOI dictated how the hand grenade fuses were to be made and provided the material, labor, and facilities. "The Government was interested in the ultimate result, but GOI independently determined the method and manner in which the desired results were to be attained." *Id.* The fact that the government contract prescribed safety standards for GOI was not the equivalent of day-to-day supervision. *Id.* Government safety inspectors surveyed the GOI premises only on a quarterly basis. *Id.* at 74.

In *Levrie v. Dept. of Army,* 810 F.2d 1311, the Fifth Circuit held that a company which supplied housekeeping services at an Army medical center was an independent contractor. Employees for the contractor were stripping a floor when they were injured. The court did not detail how it reached its conclusion as to the contractor status of the housekeeping service.

In *Broussard v. United States,* 989 F.2d 171, the Fifth Circuit held that an emergency room physician at an Army hospital was an independent contractor under the FTCA. In that case, the contract between the government and a medical services company, Emergency Medical Services Associates ("EMSA"), which employed the doctor, expressly provided that EMSA was an independent contractor. 989 F.2d at 173. The contract required EMSA to carry liability insurance of not less than $1,000,000 per occurrence. EMSA hired and paid the doctor. *Id.* at 176.

Finally, in *Brooks v. A.R. & S. Enterprises, Inc.,* 622 F.2d 8 (1st Cir.1980), the First Circuit held that the negligent driver of a United States Navy vehicle was an employee of a contractor, AR & S, rather than an employee of the United States, so the government did not waive immunity under the FTCA. 622 F.2d at 9. The plaintiffs argued that the driver was an employee because the contract between AR & S and the United States governed in detail the duties of the AR & S guards. The United States furnished motor vehicles and virtually all of the equipment used by the guards. Finally, the United States exercised daily supervision and control over all activities at the air base. Nevertheless, the court concluded that AR & S was a contractor. The court focused its analysis on whether the United States directed "the manner in which the contractor carries out its obligations under the contract." *Id.* at 11. The court found two facts to be determinative: (1) the contract specified that AR & S was a contractor, and that its employees were not government employees; (2) the AR & S workers were paid and directly supervised by AR & S, not the government.

Cupit counters that this case is more closely analogous to *Lloyd v. United States,* 211 F.Supp. 750 (S.D.Cal.1962). In that case, the plaintiff tripped on a hose placed across a doorway in a U.S. Post Office. The court found that the hose was placed negligently by a Post Office custodial worker. The question for the court was whether the worker was an employee or independent contractor under the FTCA. The court concluded that the worker was an employee and that the United States was liable for his negligence. 211 F.Supp. at 752.

■ Applying the "daily-detailed-control" test in this case, we conclude that the United States is not entitled to "summary judgment" on the issue of McGlothin's government employment status. We find that there are issues of disputed material fact which preclude dismissal.

Certainly there are facts in this case supporting a conclusion that McGlothin was an independent contractor. He supplied his own equipment. He was paid for each job, not on an annual salary or by the hour. He had performed no more than ten separate jobs for the Simmesport Post Office. The work performed by McGlothin was not part of the regular business of the Post Office. McGlothin was performing a type of janitorial service similar to the workers in *Levrie*.

We also note that there are fatal factual distinctions between the case analogized by Cupit, *Lloyd*, and the instant case. The worker in *Lloyd* was paid by contract on a yearly basis, with compensation paid semimonthly. The worker also was allowed by the postal authorities to apply for retirement as a federal employee. The *Lloyd* court did not note whether the employee provided his own equipment.

The balance of the undisputed facts before us, however, indicate that McGlothin was not an independent contractor within the definition of the FTCA.

Much of the dispute as to the authority of the Post Office to control the detailed, daily, physical performance of McGlothin arises from the fact that the contract in this case was oral. Descant and McGlothin disagree as to its terms. In *Brooks* and *Broussard* the courts hinged their findings of contractor status on the fact that the written contracts explicitly provided that the workers were independent contractors, not government employees. This case is not so obvious.

McGlothin worked in the Post Office building. He was not required to provide liability insurance and was uninsured. The labor he provided was unskilled. When he worked, Postal employees were required to be present. Although the precise degree of the daily supervision of McGlothin is uncertain, there is evidence that the Post Office had authority to control his detailed, physical performance. McGlothin did not have a key, so the Postal employees were needed to admit him into parts of the building. When he arrived at the Post Office on the day of Cupit's accident, the acting supervisor, Voiselle, called the Postmaster. Descant testified that she told Voiselle on the phone that McGlothin had to finish his job while Voiselle was in the Post Office. Descant also testified that on McGlothin's previous assignment in the Post Office she had observed him working, and that she had prescribed the particular order of rooms where he should work. There is evidence that the Post Office provided public warning notices when McGlothin worked, and that other employees locked the front doors pursuant to a policy established by Descant.

Although this is a close issue, we conclude that the United States is not entitled to dismissal on the issue of McGlothin's employment status. The United States is welcome, and expected, to raise this issue again at trial, but is not immunized against McGlothin's negligence for purposes of this motion.

### C. Negligence by Descant, Voiselle, and Chesne

Even if we were to conclude that McGlothin was an independent contractor under the FTCA, the United States would not be entitled to dismissal. This is true because Cupit stated independent claims against the United States for negligence by Post Office employees Descant, Voiselle, and Chesne. There is no dispute that each is an employee of the federal government under the FTCA.

### D. Negligence for General Premises Liability

We also interpret Cupit's amended complaint to state an independent claim against the United States for general premises liability. Under Louisiana law, premises liability is analytically distinct from negligence by one's employees working on the premises, although the facts may substantially overlap. *See Fontenot v. Fontenot*, 635 So.2d 219 (La. 1994). The question presented is whether the United States has consented to be sued for general premises liability under state law. We conclude that it has not.

When an individual is injured as a result of a hazardous condition existing on a landowner's property, a plaintiff asserting premises liability under Louisiana law has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of duty); (3) the defect in the property was a cause in fact of the resulting injury; and (4) the landowner either knew or should have known of the risk. *Millet v. Cormier*, 671 So.2d 1101, 1105–06 (La.Ct.App. 3rd Cir.1996) (citing *Farr v. Montgomery Ward and Co., Inc.*, 430 So.2d 1141 (La.Ct.App. 1st Cir.1983)).

Interpreting 28 U.S.C. § 1346(b) narrowly, as we are required to do, we find that the government's consent to be sued for "the negligent or wrongful act or omission of any employee" does not include suits for general premises liability. To our knowledge this is not an issue that has been defined by the Fifth Circuit We are mindful that numerous district courts have applied state premises liability law against the United States under the FTCA. *E.g., Torres v. United States*, 953 F.Supp. 1019 (N.D.Ill.1997); *Kendrick v. United States*, 854 F.Supp. 453 (E.D.Tex. 1994); *Cunningham v. United States*, 827 F.Supp. 415 (W.D.Tex.1993); *Evans v. United States*, 824 F.Supp. 93 (S.D.Miss.1993). We are in accord, however, with the Fourth Circuit's careful analysis in *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992). "We find nothing in the language of the act or in the legislative history of the FTCA to indicate that Congress considered the existence of a generalized liability, attributable to the United States based on any breach of a state defined duty. By expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focussed approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." *Berkman*, 957 F.2d at 113. *See also Williams v. United States*, 50 F.3d 299, 307–08 (4th Cir.1995); *Norman v. United States*, 1996 WL 377136 (E.D.Pa.1996) (following the Fourth Circuit

rule). We accordingly dismiss Cupit's claims against the United States to the extent that they are founded on general state law premises liability.

### VII. *Summary Judgment on Negligence Claims*

This does not end our inquiry. We must grant summary judgment if the undisputed facts demonstrate that the United States is entitled to a judgment as a matter of law on Cupit's surviving claims for negligence.

It is important to note again that Cupit alleged independent claims for negligence against the United States for acts or omissions by employees (1) McGlothin and (2) Descant, Voiselle, and Chesne. Cupit contends that McGlothin was negligent for, among other things, placing the rolled rug outside the entryway and that Descant, Voiselle, and Chesne were negligent for failing to supervise McGlothin, failing to lock the doors to the Post Office, failing to post warning signs for the public, and failing to provide safe access to the building.

As an initial procedural matter, we note that both parties failed to follow the plain dictates of the Uniform Local Rules for the Western District of Louisiana concerning summary judgment motions. U.L.L.R. 2.09 provides that "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Opposing parties are to submit a corresponding separate statement of facts in dispute. U.L.L.R. 2.10W.

In this case, neither party submitted a separate statement. Both instead included their factual allegations within their memoranda. We caution counsel that failure to abide by the procedural rules for summary judgment can result in the quick defeat of their arguments. Here, however, we will consider the improperly filed factual statements because the parties were equally culpable and no injustice will result from our leniency.

There is no need for us to repeat the standard for summary judgment motions, but we momentarily meander to clarify one issue. The United States argued in its reply memorandum that McGlothin's "version is flawed. It is lacking in veracity. It did not happen. It could not have ensued." Contrary to the repetitive trumpeting of the United States, it is well-established that the court does not weigh the veracity of evidence on summary judgment. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510–11, 91 L.Ed.2d at 212. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Pursuant to 28 U.S.C. § 1346(b), any liability of the United States for personal injury is determined on the basis of the law of the place where the alleged negligent acts occurred. Louisiana substantive law thus applies.

Employers are liable for the negligent acts of their employees. La. Civ. Code Ann. art. 2320; *see Washington v. Reed,* 624 So.2d 465 (La.Ct.App. 2nd Cir. 1993). To determine whether liability exists for negligence, the court employs a duty-risk analysis. *Fontenot,* 635 So.2d at 222. The plaintiff must establish that: (1) the conduct in question was a cause in fact of the resultant harm; (2) the defendant owed a duty to plaintiff; (3) the duty owed was breached; and (4) the risk or harm caused was within the scope of the breached duty. *Id.* at 223.

In this case, there is no serious dispute that the rolled rug was in the custody of the Postal Service and was a cause in fact of Cupit's injuries. There is an important factual dispute as to the precise location of the rug, whether it was partially to the side of the entrance or blocked it entirely. There are also factual disputes as to (1) whether there were any warning notices posted to alert visitors to the dangers of the Post Office maintenance, and (2) the supervision of McGlothin by the other Post Office employees. The utility of placing a loosely rolled rug just outside the front door of a public building on a busy morning certainly is minimal. Given the factual disputes, summary judgment on the negligence claims is denied.

## VII. *Conclusion*

For the reasons stated above, the alternative motion to dismiss or for summary judgment is granted as to the strict liability claim and premises liability claim against the United States and denied as to the remaining claims. The United States must file a responsive pleading to Cupit's first amended complaint within ten days after notice of this ruling. Fed.R.Civ.P. 12(a)(4)(A).