IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 98-50252

———————————

MICHAEL COLTHARP,

Plaintiff-Appellee,

versus

GOODWILL INDUSTRIES OF EL PASO INC,

Defendant-Cross Claimant-Appellant,

versus

UNITED STATES OF AMERICA,

Cross Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Western District of Texas
(EP-97-CV-38-F)

———————————

August 24, 2000

Before GARWOOD, DAVIS and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge[*]:

Goodwill Industries of El Paso, Inc. (Goodwill), defendant and

third-party plaintiff below, brings this appeal challenging both

———————————

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(a) the district court's failure to reduce the award against it and in favor of its employee plaintiff-appellee Michael Coltharp (Coltharp) by his percentage negligence as found by the jury, and (b) the district court's judgment denying Goodwill any recovery on its third party claim for indemnity or contribution against appellee-third-party defendant the United States.  We affirm.

*Context Facts and Proceedings Below*

This case began as a Texas law negligence suit filed in state court by Coltharp against his employer Goodwill for injuries Coltharp received on the evening of July 13, 1994, when, in the course and scope of his employment, he strained himself and was injured while pulling a pallet loaded with grocery items at the Fort Bliss, Texas, Commissary, which is owned and operated by the United States.  Goodwill was a "nonsubscriber" under the Texas Workers' Compensation laws and did not carry workers' compensation insurance covering Coltharp.  Hence, Coltharp's suit was not a worker's compensation action but rather was a negligence suit.

Goodwill thereafter filed a third party claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. seeking indemnity and/or contribution in respect to Coltharp's claim against it.  The United States then promptly removed the action to the district court below.  28 U.S.C. §§ 1441(a), 1442(a).

Goodwill had contracted in writing with the United States to

2

perform night and day shelf stocking at the Commissary, and under the terms of the contract it was an independent contractor. Coltharp was injured while performing some of Goodwill's shelf stocking duties under this contract. The Commissary was undergoing renovation, including the installation of new floor tile. None of the renovation work was any part of Goodwill's contract with the United States. Because some of the new tiles had broken, the United States had rubber mats and plastic sheeting placed over them to protect them from damage, including that incident to moving pallets over them during shelf stocking.

The mats and sheets had been so placed at least the day before the day on which Coltharp was injured. The placement of the mats and sheeting was not done by Goodwill and was not a part of its contract, but it made Goodwill's moving of its pallets used by it in the shelf stocking work it performed more difficult. For this reason, Ms. Wood, Goodwill's project manager (the contract required Goodwill to have an on-site project manager with overall coordination of all daily work under the contract), being concerned for the safety of the Goodwill employees, on the morning of the day Coltharp was injured requested of the Commissary manager (an employee of the United States) that the mats be removed. The Commissary manager refused. Ms. Wood accordingly determined to advise the Goodwill day and night shift personnel of her concerns and to allocate additional pullers to move the pallets. She

3

testified six to nine pullers should have been working the night of plaintiff's injury to move the pallets over the mats and because it was an unusually busy night. However, only three pullers actually worked that evening.

When Coltharp began his duties that evening he realized that the mats on the floor made his work more difficult, and expressed his concern to Mr. Mier, the Commissary nighttime supervisor (an employee of the United States). Mier told him the mats could not be removed. Coltharp later voiced his concern to Marquez, his Goodwill supervisor. Marquez requested of Mier that the mats be removed and Mier again refused.

Marquez then suggested to Coltharp that he try to maneuver around the mats. Moving a pallet over a mat was less of a problem when one person pushed and another pulled; whether to seek such assistance was left to the discretion of each individual puller. Coltharp successfully moved his pallet over the mats several times before his injury, including five or six times, at least some of which were with the assistance of another puller, over one particularly difficult area at which Coltharp ultimately suffered his injury. That occurred as he was moving the pallet by himself but thought that a fellow Goodwill employee, who was behind him, would offer assistance when he began to have trouble, but the fellow employee did not. Coltharp then felt a sharp pain in his groin and suffered severe injury.

4

The Goodwill contract with the United States provided, as Ms. Wood was aware, that Goodwill was entitled to seek extra compensation from the United States should the United States change the conditions under which Goodwill had to perform its duties under the contract. Goodwill did not seek any such extra compensation.

Coltharp's case against Goodwill was tried to the jury and Goodwill's contribution/indemnity claim against the United States was simultaneously bench tried. The jury found that the negligence of Coltharp, Goodwill and the United Sates, each, was a proximate cause of Coltharp's injury (Q1); that as between Coltharp and Goodwill, 97% of the causative negligence was Goodwill's and 3% was Coltharp's (Q2); that as between Goodwill and the United States, 65% of the causative negligence was Goodwill's and 35% was the United States' (Q3); and that Coltharp's actual damages amount to $125,000 (Q4). The district court treated the jury's verdict as binding for purposes of Coltharp's suit against Goodwill; in regard to Goodwill's claim for contribution and indemnity against the United States, the district court treated the jury's verdict as advisory only and entered its own findings of fact and conclusions of law. The district court rendered judgment on the verdict for Coltharp against Goodwill in the amount of $125,000, and, on the basis of its findings and conclusions, rendered judgment that Goodwill take nothing on its claim against the United States.

Goodwill brings this appeal raising only the following two

5

claims of error, stated in its brief as follows:

> "1.    The first issue on appeal is whether the comparative negligence of Michael Coltharp is to be considered pursuant to Texas law in determining whether or not to reduce the money judgment by the percentage of negligence the jury determined attributable to the Plaintiff.

> 2.    The second issue on appeal is whether or not the United States retained sufficient control over the part of the work assigned to Goodwill Industries of El Paso, as an independent contractor as to create a legal duty by which the United States would be responsible for its negligent acts."

*Discussion*

1.    *Effect of plaintiff Coltharp's contributory negligence*

The question posed by this issue had, at the time this case was orally argued, divided the Texas Courts of Appeal, and applications for writs of error to the Supreme Court of Texas raising that issue were pending or possible.  As we advised the parties, we accordingly withheld our decision to see if the Texas Supreme Court would review one or more of those decisions and resolve the issue.  It recently did so in *The Kroger Co. v. Keng*, No. 98-1012, Tex. Sup. Ct., May 11, 2000, rehearing denied August 24, 2000 (affirming the decision of the Tyler Court of Appeals, 976 S.W.2d 882 (1998)).  *Kroger* holds that where an employee sues his employer, who is a non-subscriber to workers' compensation insurance, for an injury incurred in the course and scope of his employment, of which a proximate cause is the negligence of the employer, the fact that the employee's negligence is also a

6

proximate cause of the injury not only does not bar the employee's recovery from the employer but does not in any way reduce that recovery. Under *Kroger* the district court correctly rendered judgment for Coltharp against Goodwill in the full amount of his $125,000 damages found by the jury, without any reduction on account of the jury's finding of 3% causative negligence on the part of Coltharp. We accordingly reject Goodwill's first claim of error.

2. *Liability of the United States*

In its findings and conclusions the district court stated:

"5. . . . The FTCA expressly has not waived liability [of the United States] for the negligent acts of its independent contractors. *United States v. Orleans*, 425 U.S. 807, 814 (1976) . . .

6. In Texas, the United States has no duty to see that an independent contractor performs its work in a safe manner. *Levrie v. Department of the Army*, 810 F.2d 1311 (5th Cir. 1987) . . .

7. Under Texas law, the duty of the United States to its independent contractor is similar to that of an owner or occupier of land to a business invitee. *Shell Oil Co. v. Lamb*, 493 S.W.2d 742, 747 [Tex. 1973]. One duty is to warn of hidden dangers that exists when a contractor enters the premises, or that arise from activity other than that of the contractor. *Id.; Levrie*, 810 F.2d at 1313.

8. The United States owed no such legal duty to its independent contractor Goodwill because the placement of the mats was sufficiently open and obvious so as not to constitute a hidden danger on the premises.

9. The second duty to an independent contractor involves injuries caused by an activity or instrumentality on the premises. Where the employer retains control of a part of the work assigned to the contractor, the employer has

7

a duty to exercise that control with reasonable care. *Levrie*, 810 F.2d at 1313; *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985). The "retained control" over the work "must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Redinger*, 689 S.W.2d at 417.

10. The evidence at trial demonstrated that the United States did not retain control over the work of the independent contractor within the meaning of Texas law. Under the Commissary Contract, the United States did not retain the right to direct Goodwill employees as to the details of their work; the Contract further provided that Goodwill was entitled to seek extra compensation should the United States change the conditions under which Goodwill was to perform under the contract. Plaintiff and other Goodwill employees took their instructions from Goodwill supervisors, not United States' employees. Goodwill employees were not directed by United States employees on how to do their jobs.

11. Defendant [Goodwill] at all times retained control of the work it had been contracted to perform. Goodwill project manager Janet Wood was aware of the placement of the mats and the government's position with respect to removal of the mats well before Plaintiff arrived to work on the evening of Plaintiff's injuries. With the notice, Goodwill had an opportunity to provide for additional personnel or develop an alternative plan for delivering the food items. Ms. Wood attempted to make arrangements for additional personnel; the evidence at trial demonstrated that when two or more persons "pushed and pulled" the pallets across the mats, the mats could be successfully negotiated without substantial difficulty.

12. Because the United States did not retain control over part of the work assigned to its independent contractor, the United States owed no legal duty to Goodwill with respect to the placement of the mats on the tile floor of the Commissary. . . ."

Goodwill admits that "the dangers were open and obvious."

However, it contends that "the United States is responsible as a result of retaining control."

Under our holding in *Levrie v. Department of Army*, 810 F.2d

8

1311 (5th Cir. 1987), the question of whether the United States retained sufficient control over its independent contractor within the meaning of Texas law so as to be liable thereunder on the basis asserted is a question of fact, and we review the district court's finding that the United States did not retain sufficient such control under the clearly erroneous standard.  Thus, in *Levrie*, we stated:

> "Under the terms of the Federal Torts Claims Act, the United States is not liable for the negligence of a government contractor.
>
> . . .
>
> Under Texas law, the owner of property has a general duty to use reasonable care to keep the premises under his control in a safe condition.  This duty may subject the owner to liability for negligence in two situations: (1) those arising from a defect in the premises, and (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985).  This case involves the latter.
>
> Texas law provides generally that a property owner does not have a duty to ensure that an independent contractor performs his work in a safe manner. *Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex. 1976).  Nor does the owner have a duty to protect the contractor's employees from hazards that are incidental to, or part of, the work the independent contractor is hired to do. *Shell Oil Co. v. Songer*, 710 S.W.2d 615, 618 (Tex.App.- Houston [1st Dist.] 1986, no writ).  However, when the owner of the premises exercises control over or interferes with the contractor's performance of his work, the owner may be liable unless he exercises reasonable care in supervising the contractor's activity. *Redinger*, 689 S.W.2d at 418.  In *Redinger*, the Texas Supreme Court stated that supervisory control might consist of the power to direct the order in which work shall be done or power to forbid its being done in a dangerous manner. *Id.*

9

*The district court found that the defendants did not control the operations of Williams [the independent contractor] within the meaning of Texas law. This is a finding of fact, which we review under the clearly erroneous standard . . ."* Id. at 1314 (emphasis added).

After review of the record and consideration of the briefs and argument of counsel, it is apparent to us that the district court's findings are not clearly erroneous and that it committed no error of law in holding for the United States. We accordingly reject Goodwill's second point of error.

*Conclusion*

For the reasons stated, the judgment of the district court is

AFFIRMED.

10